F I L E D
Clerk
District Court

AUG 12 2026

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

XINLIANG GUO,

        Petitioner,

    v.

SERGIO ALBARRAN, Field Office Director, San Francisco Field Office, Immigration and Customs Enforcement;
DAVID VENTURELLA, Acting Director, Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security;
TODD BLANCHE, U.S. Attorney General; and
ANTHONY TORRES, Commissioner of the Commonwealth of the Northern Mariana Islands Department of Corrections;
in their official capacities,

        Respondents.

Case No. 1:26-cv-00016

**DECISION AND ORDER**
**GRANTING PETITION FOR**
**WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Xinliang Guo's Petition for Writ of Habeas Corpus (ECF No. 1), filed July 24, 2026, in which he names the Field Office Director of the San Francisco Field Office of Immigration and Customs Enforcement (ICE), ICE's Acting Director, the U.S. Secretary of Homeland Security, the then-acting U.S. Attorney General,[1] and the Commissioner of the Commonwealth of the Northern Mariana Islands (CNMI) Department of Corrections (DOC) as respondents. Guo alleges that Respondents' failure to provide him with a bond hearing after his

---

[1] During the pendency of this case, Todd Blanche was confirmed and sworn in as the U.S. Attorney General.

arrest and detention pending completion of immigration removal proceedings against him is unlawful because (1) he is subject to discretionary detention under 8 U.S.C. § 1226(a) and its implementing regulations—which allow for release on bond or probation—and not mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and (2) his prolonged detention without an opportunity for a custody determination or bond hearing violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Guo accordingly seeks a writ of habeas corpus that, *inter alia*, declares that Respondents' detention of him is unlawful and orders Respondents to "either release [him], or promptly afford an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released[.]" (Pet. 7 (prayer for relief), ECF No. 1.)

As a preliminary matter, the Court finds that decision on the papers, without need for a hearing, is appropriate and accordingly VACATES the hearing set for August 18, 2026.  For the reasons set forth below, the Court GRANTS Guo's Petition because he is subject to discretionary detention under 8 U.S.C. § 1226(a), and not mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### I.    BACKGROUND

Guo is a national of the People's Republic of China who is currently detained, and has been detained since September 16, 2025, at the CNMI-DOC under the physical custody of Respondents. (Pet. ¶ 1; *see also* Resp. of Resp't Anthony Torres 1-2 (indicating that Guo is detained at the CNMI-DOC under ICE custody pursuant to agreement between federal government and CNMI-DOC), ECF No. 5.)  Guo first entered the CNMI in April 2023, apparently[2] as a parolee under the CNMI-

---

[2] Guo and the Federal Respondents indicate that Guo was paroled under the CNMI-only parole program, which representations are corroborated by the allegations set forth in the September 24, 2025 Notice to Appear (the second served on Guo) charging Guo as being subject to removal.  (*See* U.S.'s Opp'n, Ex. A, at 1, ECF No. 8-1).  The Court, however, notes an inconsistency between the representations and the limited

only parole program, and remained in the CNMI after expiration of his parole.  (Pet. ¶ 9; U.S.'s Opp'n 2-3 (explaining that Guo presented himself for inspection as a tourist on April 28, 2023, claimed fear and sought asylum, and was served with a notice to appear and paroled into the CNMI under the CNMI-only parole program with a parole expiration date of July 11, 2023), ECF No. 8.)  On September 16, 2025, ICE arrested Guo and detained him at CNMI-DOC.  (Pet. ¶ 9.)  Shortly thereafter, Guo was served with a second notice to appear and placed into immigration removal proceedings, whereupon he sought a bond determination.  (*Id.* ¶ 27; U.S.'s Opp'n 3; *see also id.*, Ex. A (Notice of Appear dated September 24, 2025), ECF No. 8-1.)  At an October 2025 hearing, an immigration judge denied bond on the ground that Guo was not eligible for bond because he was not "admitted" when he entered the CNMI; Guo has not been "afforded a meaningful bond redetermination hearing before a neutral immigration judge" since.  (Pet. ¶¶ 27-28.)

As to his immigration removal proceedings, Guo sought withholding of removal and relief under the Convention Against Torture; however, in February 2026, the immigration court denied him relief.  (*Id.* ¶ 9; U.S.'s Opp'n 3.)  Guo timely appealed the denial of relief to the Board of Immigration Appeals.  (Pet. ¶ 9; U.S.'s Opp'n 3.)  His appeal remains pending, with the time for final disposition of his appeal—including, if necessary, judicial review—"expected to last months, if not years."  (Pet. ¶¶ 9, 37; U.S.'s Opp'n 3.)  During his continuing detention at CNMI-DOC,

---

record presented.  The Federal Respondents represent that Guo's parole expired on July 11, 2023.  (U.S.'s Opp'n 2.)  The September 24, 2025 Notice to Appear alleges that Guo was paroled only "until April 28, 2023"—the same day he arrived at Saipan International Airport, presented himself for inspection, and sought asylum.  (*Id.*, Ex. A, at 1.)  No party submitted the first notice to appear served on Guo upon his arrival and request for asylum.  (*See also* U.S.'s Opp'n 2 (explaining that first notice to appear "was not filed with the Immigration Court").)

As such, though Guo and the Federal Respondents agree that Guo overstayed his parole, it is not readily apparent from the record how long Guo overstayed his parole or whether Guo was indeed paroled under the CNMI-only parole program, as opposed to some other parole or other authorization that did not confer "admission," *see* 8 U.S.C. 1182(d)(5)(A); *e.g.*, *Chi v. Albarran*, No. 1:26-cv-00014, ECF No. 14, at 2, 2026 WL 2188283, at *1 (D. N. Mar. I. July 29, 2026) (grant of advance parole for returning to CNMI after receiving medical treatment in Guam).

Guo "has been housed together with criminal defendants serving their sentences and those waiting to be sentenced" such that his detention "has been exactly the same as penal incarceration." (*Id.* ¶¶ 34-36.)

Guo filed the instant Petition in the morning of July 24, 2026. Hours later, the Court issued an order directing Respondents to show cause why Guo's Petition should not be granted. (Order to Show Cause, ECF No. 2.) Respondent Torres filed his Response (ECF No. 5) on July 27, 2026, in which he indicated that he "takes no express position" on the legal issues presented in Guo's Petition. (Resp. of Resp't Anthony Torres 2.) After seeking and obtaining an extension (*see* Order Granting Unopposed Mot. for Extension of Time, ECF No. 7), on August 6, 2026, all other Respondents (the "Federal Respondents") jointly filed a single Opposition (ECF No. 8), accompanied by one exhibit (ECF No. 8-1) consisting of the Notice to Appear served on Guo on September 24, 2025. Guo filed a Reply (ECF No. 9) on August 10, 2026.

## II.    LEGAL STANDARD

Guo seeks a writ of habeas corpus. "Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions[,]" 28 U.S.C. § 2241(a), where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States[,]" *id.* § 2241(c)(3). *See also Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are in custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks omitted)). Guo, as the petitioner, bears "the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). "The court shall summarily hear and determine the facts, and dispose of

the matter as law and justice require," and "shall forthwith award the writ . . . , unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

### III.    DISCUSSION

As all Parties recognize (*see* Pet. ¶¶ 4, 25, 29, 32; Resp. of Resp't Anthony Torres 2; U.S.'s Opp'n 3-4; Reply 1, ECF No. 9), Guo's Petition raises legal issues that the Court has previously addressed in disposing of similar petitions for writs of habeas corpus.  As this Court recently recounted:

> In *Li v. Albarran*, No. 1:26-cv-00011, the petitioner there was a national of the People's Republic of China who was paroled into the CNMI under the CNMI-only parole program, overstayed his parole, and was detained pending completion of immigration removal proceedings against him.  *Li v. Albarran*, No. 1:26-cv-00011, ECF No. 17, at 3, 2026 WL 1697872, at *1-2 (D. N. Mar. I. June 12, 2026).  The petitioner sought a bond hearing with the immigration court; however, the immigration court, without citing any legal authority, denied the request because it lacked jurisdiction to entertain his request for bond.  *Id.*  The petitioner then filed a petition for a writ of habeas corpus in this Court, naming the same Respondents . . . , asserting that his continued detention without bond violated 8 U.S.C. § 1226(a) and its implementing regulations along with the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and seeking relief in the form of a writ directing Respondents "to schedule a bond hearing before an immigration judge and ordering that the immigration judge may not summarily deny[] bond at such hearing."  *Id.* at 1-2, 2026 WL 1697872, at *1 (internal quotation marks and original brackets omitted).  In subsequent briefing and oral argument, the Federal Respondents challenged the Court's jurisdiction to entertain the petition, contended that the petitioner was properly detained under 8 U.S.C. § 1225(b)(2)(A), and raised additional arguments specifically arising from the unique nature of the CNMI-only parole program.  *Id.* at 5, 9, 12-14, 2026 WL 1697872, at *2, 4, 6-7.  The Court rejected the Federal Respondents' arguments, specifically holding:
>
> (1) The Court had jurisdiction to consider the petition because the petitioner's challenge to his detention did not arise from the three actions set forth in the jurisdiction-stripping provisions of 8 U.S.C. § 1252(b)(9) or (g), *Li*, ECF No. 17, at 5-8, 2026 WL 1697872, at *2-4;

(2) The applicable provision governing the petitioner's detention was 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225(b)(2)(A), because the petitioner was not "seeking admission," *Li*, ECF No. 17, at 8-14, 2026 WL 1697872, at *4-7;

(3) As 8 U.S.C. § 1226(a) applied, the petitioner was entitled to a bond hearing before an immigration judge, *Li*, ECF No. 17, at 15, 2026 WL 1697872, at *7; and

(4) In view of the statutory basis for concluding that the detention of the petitioner was unlawful, the Court did not need to reach the petitioner's constitutional challenge, *id.* at 5, 2026 WL 1697872, at *2.

The Court accordingly granted the petition and ordered Respondents to

arrange an individualized bond hearing before a neutral immigration judge in which the Government bears the burden of establishing by clear and convincing evidence that the petitioner is a danger to the community or a flight risk if released. If no hearing occurs within fourteen days of this order, the petitioner shall be released from Respondents' custody.

*Id.* *See also Shen v. Albarran*, No. 1:26-cv-00012, ECF No. 12, 2026 WL 2059140 [(D. N. Mar. I. July 17, 2026)] (decision and order granting petition for writ of habeas corpus on same grounds).

*Chi v. Albarran*, No. 1:26-cv-00014, ECF No. 14, at 4-6, 2026 WL 2188283, at *2-3 (D. N. Mar. I. July 29, 2026) (decision and order granting petition for writ of habeas corpus) (original brackets omitted); *see also Huang v. Albarran*, No. 1:26-cv-00013, ECF No. 14, at 5-6, 2026 WL 2188288, at *2-3 (D. N. Mar. I. July 29, 2026) (decision and order granting petition for writ of habeas corpus) (stating same summary). Furthermore, as noted by Guo in his Reply (*see* Reply 1), the Ninth Circuit recently issued a decision for publication holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). In concluding so, the Ninth Circuit rejected the same

6

arguments raised by the Federal Respondents here concerning the correct interpretation of 8 U.S.C. §§ 1225 and 1226. *See id.* at 27, 2026 WL 2196424, at *10 (noting that, "absent anything further," 8 U.S.C. § 1226(a) applied to inadmissible and deportable aliens present in the United States); *id.* at 27-41, 2026 WL 2196424, at *10-16 (construing 8 U.S.C. § 1225(b)(2)(A) as applying to aliens seeking to enter the United States at the border and rejecting interpretation of "applicant for admission" as applying to all aliens present in the United States without admission); *id.* at 41-45, 2026 WL 2196424, at *16-17 (rejecting arguments relying on other provisions of 8 U.S.C. § 1225); *id.* at 45-55, 2026 WL 2196424, at *18-21 (rejecting arguments asserting that 8 U.S.C. § 1225(b)(2)(A) "should be read as accomplishing a groundbreaking change in mandatory detention policy" in view of lack of clarity of language suggesting such change, existence of 8 U.S.C. § 1226(c), and Congressional action in amending classes of aliens excepted from discretionary detention regime under 8 U.S.C. § 1226).

The Federal Respondents do not identify any material difference in facts or change in law that would distinguish this case from *Li* or *Rodriguez Vazquez*. To the contrary, the Federal Respondents expressly "maintain[ their] position here and incorporate[] by reference [their] Response (ECF No. 11)" in *Li*. (U.S.'s Opp'n 4.) The Court is not persuaded by the Federal Respondents' "respectful effort to persuade this Court to reconsider its conclusions" (*id.*) and depart from its holdings in *Li*. As to *Rodriguez Vazquez*, the Federal Respondents summarily distinguish *Rodriguez Vazquez* in a footnote on the basis that *Rodriguez Vazquez* involved an alien "who . . . entered without inspection," as opposed to Guo's being "allowed to land on Saipan under the CNMI-Only Parole program and then claim fear and seek asylum." (U.S.'s Opp'n 2 n.1 (asserting Guo "continues as though he were arriving at our border and requesting entry").) The Court disagrees. The reasoning of *Rodriguez Vazquez*, consistent with the language and structure

of 8 U.S.C. §§ 1225 and 1226, does not turn on whether an alien was previously inspected prior to being detained for immigration removal proceedings. Instead, the relevant inquiry is whether the alien is "present in the interior of the United States" and either "inadmissible" or "deportable," as those latter two terms are defined in the context of immigration law. *Rodriguez Vazquez*, slip op. at 25, 2026 WL 2196424, at \*10. As Guo was paroled into the CNMI, Guo was never "admitted," *see* 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5); consequently, at the time ICE detained Guo for immigration removal proceedings, Guo was "present in the interior of the United States" as an "inadmissible" alien—and thus plainly falls within *Rodriguez Vazquez*'s holding that continued detention of such aliens is pursuant to the discretionary detention regime of 8 U.S.C. § 1226, and not the mandatory detention regime of 8 U.S.C. § 1225. The Court further notes that the Federal Respondents had the opportunity to detain Guo under 8 U.S.C. § 1225 in April 2023 when Guo first arrived in Saipan and sought asylum. *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (claims for asylum to be referred for interview by asylum officer); *id.* § 1225(b)(1)(B)(ii) (alien "shall be detained for further consideration" of asylum application if asylum officer "determines at the time of the interview that an alien has a credible fear of persecution")' *id.* § 1225(b)(1)(B)(iii)(IV) (alien "shall be detained pending a final determination of credible fear of persecution"). The opportunity lapsed, however, upon the Federal Respondents' apparent decisions to parole Guo and not pursue the first notice to appear served on Guo. Thus, Guo's factual circumstances became substantively identical to *Li*.

As such, for the same reasons as set forth in *Li*, as confirmed by the reasoning of *Rodriguez Vazquez*, the Court finds that:

(1) The Court has jurisdiction to entertain Guo's Petition;

(2) The applicable provision governing Guo's detention is 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225(b)(2)(A), as Guo is not an alien "seeking admission";

(3) As 8 U.S.C. § 1226(a) applies, Guo is entitled to a bond hearing before an immigration judge; and

(4) As Guo is entitled to his requested relief based on his statutory arguments, the Court declines to reach his constitutional challenge to his prolonged detention of almost eleven months without a bond hearing.  *United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999) ("[C]ourts are not to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (internal quotation marks omitted)).

## IV.    CONCLUSION

Petitioner Guo has met his burden to show that his continued detention without a bond hearing is unlawful.  Accordingly,

(1) Guo's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

(2) Respondents shall, pursuant to 8 U.S.C. § 1226(a), arrange for an individualized bond hearing to take place before a neutral immigration judge within fourteen days of issuance of this order, at which the Government bears the burden of establishing by clear and convincing evidence that Guo is a danger to the community or a flight risk if released;

(3) Should no such hearing occur within fourteen days of issuance of this order, Respondents shall release Guo from custody;

(4) Respondents shall file a status report by **September 4, 2026**, notifying the Court about whether the bond hearing is held, the determination on bond, and Guo's status in custody or on release;

(5) The August 18, 2026, hearing on Guo's Petition for Writ of Habeas Corpus (ECF No. 1) is VACATED; and

(6) The Clerk is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED this 12th day of August, 2026.

_____
RAMONA V. MANGLONA
Chief Judge

10